UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE HAWKINS, DARSEMIA JACKSON, and MERIJA WALLACE, individually and on behalf of those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | 09 C 3633 |
| vs. | ) ) ) | Judge Feinerman |
| SECURITAS SECURITY SERVICES USA, INC., | ) ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Stephanie Hawkins, Darsemia Jackson, and Merija Wallace brought this action against Securitas Security Services USA, Inc., alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. Plaintiffs worked as hourly, non-exempt uniformed security officers for Securitas. The complaint alleges that Plaintiffs performed three categories of off-the-clock work: (1) mandatory training; (2) work performed before and after their shifts; and (3) cleaning and maintaining their uniforms. Plaintiffs maintain that Securitas' failure to pay them for this off-the-clock work violated the FLSA and the IMWL.

The court dismissed Wallace as a party plaintiff on judicial estoppel grounds. 2011 WL 2837269 (N.D. Ill. July 18, 2011). Now before the court is Securitas' motion to dismiss the IMWL claim under Federal Rule of Civil Procedure 12(b)(1). Securitas submits that because Plaintiffs belong to unions that entered into collective bargaining agreements ("CBAs") with Securitas, the court must interpret the CBAs when adjudicating the IMWL claim, resulting in

-1-

preemption under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The motion is denied.

To support its invocation of Rule 12(b)(1), Securitas cites *Monroe v. Mo. Pac. R.R. Co.*, 115 F.3d 514 (7th Cir. 1997), which affirmed the district court's Rule 12(b)(1) dismissal of a retaliatory discharge claim as preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, a very close cousin of the LMRA. *See Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 394 (7th Cir. 2011) (noting that the two statutes' preemption standards are "virtually identical"). *Monroe* does not directly address whether the district court's preemption-based dismissal should have rested on jurisdictional grounds as opposed to on the merits, which reduces, if not eliminates, its precedential value on that issue. *See ibid.* ("Even when the issue concerns subject-matter jurisdiction, a topic passed over without discussion has not been resolved."). Further doubt is cast by other Seventh Circuit decisions affirming Rule 12(b)(6) dismissals of state law claims as preempted by the LMRA. *See Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 659-62 (7th Cir. 1992) (although the opinion does not expressly mention Rule 12(b)(6), the district court dismissed the state law claim with prejudice, which indicates that the dismissal was under Rule 12(b)(6) and not Rule 12(b)(1)); *Evans v. Einhorn*, 855 F.2d 1245 (7th Cir. 1988); *see also Helman v. Alcoa Global Fasteners, Inc.*, 637 F.3d 986, 988-89 (9th Cir. 2011) (affirming Rule 12(b)(6) and Rule 12(c) dismissal of state law claims as preempted by the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.*); *Currie v. Diamond Mortg. Corp. of Ill.*, 859 F.2d 1538 (7th Cir. 1988) (affirming Rule 12(b)(6) dismissal of state law claim as preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1735f-7 note). Like *Monroe*, those decisions do not directly address whether Rule 12(b)(1) or Rule 12(b)(6) is the appropriate vehicle for preemption-based dismissals of state law claims.

-2-

In *Turek v. Gen. Mills, Inc.*, __ F.3d __, 2011 WL 4905732 (7th Cir. Oct. 17, 2011), the Seventh Circuit indicated that preemption-based dismissals are appropriately sought on the merits rather than for lack of jurisdiction.  Addressing the appropriate categorization of the dismissal of the plaintiff's claim, the Seventh Circuit observed: "Were this a case of complete preemption the plaintiff's purported state claim would actually be a federal claim.  The claim would invoke federal jurisdiction but would be quickly dismissed on the merits because there is no basis for the claim in federal law." *Id*. at *1.  Section 301 of the LMRA has been held to "completely preempt analogous state-law actions," *In re Repository Techs., Inc.*, 601 F.3d 710, 723 (7th Cir. 2010), so *Turek* undermines the notion that a dismissal on preemption grounds is jurisdictional.  *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004) ("Preemption, moreover, does not normally concern the subject-matter jurisdiction of a court to hear a claim, which is what is relevant to the resolution of a Rule 12(b)(1) motion.  Rather, the doctrine generally concerns the merits of the claim itself—namely, whether it is viable and which sovereign's law will govern its resolution.  That is why litigants typically invoke preemption as a defense to state-law claims asserted in state or federal court, not as a jurisdictional defect.").  But *Turek* does not mention, let alone disapprove, *Monroe*, leaving somewhat unclear the correct categorization of Securitas' motion to dismiss.

Section 301 states, in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). By its plain terms, § 301 does not *deprive* the federal courts of jurisdiction over anything; rather, it *grants* jurisdiction to district courts to hear disputes concerning collective bargaining agreements. Moreover, as just noted, the statute preempts analogous state law claims, such as state law breach of contract claims for violating a CBA, or claims under a state statute like the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*., that simply creates a statutory mechanism for enforcing wage contracts. Such claims, although brought under state law, are characterized as arising under § 301 so long as interpretation of the CBA provision at issue is fairly debatable. *See Baker v. Kingsley*, 387 F.3d 649, 657-59 (7th Cir. 2004); *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498-501 (7th Cir. 1996). Because such claims arise under § 301, they are subject to dismissal under the "well settled [rule] that if a CBA establishes a grievance and arbitration procedure for the redress of employee complaints, employees wishing to assert claims based on a CBA first must exhaust the grievance procedure before resorting to a judicial remedy." *McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007); *see also Atchley*, 101 F.3d at 501. Dismissal for failure to exhaust arbitral remedies—which Securitas' reply brief indicates is the real basis of its motion to dismiss, Doc. 47 at 9-13—is generally understood to lie not under Rule 12(b)(1) for lack of subject matter jurisdiction, but under Rule 12(b)(6) or Rule 12(c) for failure to state a claim upon which relief can be granted. *See Roman v. United States Postal Serv.*, 821 F.2d 382, 384 (7th Cir. 1987); *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1476, 1488-89 (7th Cir. 1985).

Still, Rule 12(b)(6) would have been an improper vehicle for Securitas to pursue its preemption challenge to the IMWL claim, as Securitas filed an answer (Doc. 7-2) months before filing this motion. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); *Alioto v. Town of Lisbon*, 651 F.3d

715, 718 (7th Cir. 2011). Rule 12(c) also would have been an improper vehicle because

Securitas' motion rests on the CBAs, which are neither attached to nor referenced by the

complaint. Rule 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside

the pleadings are presented to and not excluded by the court, the motion must be treated as one

for summary judgment under Rule 56. All parties must be given a reasonable opportunity to

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Plaintiffs submit

no extrinsic materials in opposing dismissal, which is easy to understand because their status as

union members covered by the CBAs is undisputed and because their legal arguments against

preemption do not rely on any other piece of extrinsic evidence. As far as preemption is

concerned, "neither side disputes any factual allegation, only the legal conclusions that are

drawn from them." *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999). Under

these circumstances, Securitas' motion might properly be considered one for summary judgment.

*See ibid*. The point ultimately is immaterial, as the result here would be the same regardless of

whether Securitas' motion is properly brought under Rule 12(b)(1) or whether it should have

been brought under Rules 12(b)(6), 12(c), or 56.

> The principles governing § 301 preemption are as follows:

> Section 301 preempts claims directly founded on or "substantially
> dependent on analysis of a collective-bargaining agreement." When the
> "heart of the [state law] complaint [is] a ... clause in the collective
> bargaining agreement, that complaint arises under federal law." If the
> resolution of a state law claim depends on the meaning of, or requires the
> interpretation of, a collective bargaining agreement, the application of state
> law is preempted and federal labor law principles must be employed to
> resolve the dispute.

*Atchley*, 101 F.3d at 498-99 (citations omitted, brackets in original). The "heart" of the IMWL

claim here is not a "clause" in the CBAs. The complaint does not even mention the CBAs. The

IMWL requirement that Plaintiffs seek to enforce is an overtime provision stating that employees must be paid at least "1½ times the regular rate at which he is employed" for all hours worked in excess of forty per week. 820 ILCS 105/4a(1); *see* Doc. 46 at 4 ("Plaintiffs simply seek to recover unpaid overtime at a rate of one and a half times their regular rate of pay for all time worked in excess of forty (40) hours per week as required by the IMWL."). Plaintiffs have made clear in their papers and in open court that this lawsuit seeks to vindicate *only* their statutory wage rights, *not* any additional rights provided by the CBAs. Doc. 46 at 4.

Securitas implicitly concedes this point, but responds that resolving Plaintiffs' IMWL claims would require "interpretation of" the CBAs in several respects; this argument, if correct, would warrant preemption even though Plaintiffs are not seeking to enforce any CBA provision entitling them to more than the pay already required by the IMWL. *Atchley*, 101 F.3d at 499; *see also Tifft v. Commonwealth Edison Co.*, 366 F.3d 513, 517 (7th Cir. 2004). Governing precedent emphasizes that it is the "interpretation" of a CBA, and not a mere "reference" to a CBA, that warrants preemption. *See In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001) ("a state law claim is not preempted if it does not require interpretation of the CBA even if it may require reference to the CBA"). Illustrating the point, the Seventh Circuit has held that preemption is not warranted "(1) when the particular [CBA] provision is so clear as to preclude all possible dispute over its meaning; (2) if the parties do not dispute the interpretation of the relevant CBA provisions, or (3) where reference to the CBA is only necessary for computing damages." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008) (internal quotation marks, citations, and alterations omitted).

Securitas first argues that because the CBAs' provisions are more generous than the IMWL—requiring, for example, double pay on certain holidays and straight time on certain

holidays not worked—the court "will have to examine and interpret the CBAs in order to analyze and resolve Plaintiffs' claim under the IMWL." Doc. 27 at 8; *see also* Doc. 47 at 7-9. The argument is incorrect. Where, as here, a plaintiff seeks to vindicate *only* her rights under state law, the fact that a CBA provides the plaintiff with *additional* rights does not transform her claim into one to enforce the CBA. *See Chavez v. Don Stoltzner Mason Contractor, Inc.*, 2010 WL 1417029, at *2 (N.D. Ill. Apr. 5, 2010) ("a plaintiff may choose to enforce solely those independent state-created rights and forego enforcement of CBA-created rights"). As "the master of [their] complaint," if Plaintiffs do not wish to press their additional CBA rights in this case, federal law does not force them to do so. *Rice v. Panchal*, 65 F.3d 637, 639, 646 (7th Cir. 1995) (holding that ERISA does not preempt the plaintiff's claim that the ERISA plan administrator is liable for medical malpractice where the plaintiff premised the claim solely on state law and did not invoke the ERISA plan). As the Supreme Court explained:

> When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim …. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law …. If a defendant could do so, the plaintiff would be master of nothing.

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987). It does not matter whether Plaintiffs' decision to forego their CBA rights in this lawsuit is wise or foolish, strategically wise or shortsighted, or consistent or inconsistent with the wishes of their union. All that matters is that Plaintiffs are content with enforcing their statutory rights and willing to leave their additional CBA rights on the table—certainly for purposes of this case, and perhaps forever if issue preclusion prevents them from later seeking to enforce the CBA for time periods covered by this

suit.  The mere existence of those additional CBA rights will not require the court to interpret the

CBAs when resolving the IMWL claim, and thus do not result in preemption.[*]

Second, Securitas argues that to calculate the hours for which Plaintiffs should receive

overtime pay, the court must interpret a CBA provision preventing employees from working

more than forty hours during any given week unless "authorized by management."  The term

"authorized by management" is subject to reasonable dispute, so if Plaintiffs' IMWL overtime

claim turned in any respect on whether they had received such authorization, the claim would be

preempted.  *See Baker*, 387 F.3d at 657-59; *Atchley*, 101 F.3d at 498-501.  But the IMWL claims

do not turn on that CBA term.  The "hours" Plaintiffs worked for purposes of their IMWL claim

is governed by the IMWL and regulations promulgated thereunder, which define "hours worked"

as "all the time an employee is required to be on duty, or on the employer's premises, or at other

prescribed places of work, and any additional time he or she is required or permitted to work for

the employer."  56 Ill. Admin. Code § 210.110.

Illinois courts look to the FLSA when adjudicating an IMWL claim.  *See Urnikis-Negro*

*v. Am. Family Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010) ("The overtime provision of

the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), is parallel to that of the FLSA, and

Illinois courts apply the same principles … to the state provision."); *Condo v. Sysco Corp.*, 1

---

[*] The court respectfully disagrees with *Mitchell v. JCG Industries*, 2011 WL 2143576, at *4-7 (N.D. Ill. May 31, 2011), *Thigpen v. Ill. Bell Telephone Co.*, 2010 WL 5373827, at *3-4 (N.D. Ill. Dec. 21, 2010), *Curry v. Kraft Foods Global, Inc.*, 2010 WL 4338637, at *6 (N.D. Ill. Oct. 25, 2010), *Anderson v. JCG Industries, Inc.*, 2009 WL 3713130, at *4 (N.D. Ill. Nov. 4, 2009), and *Gelb v. Air Con Refrigeration & Heating, Inc.*, 826 N.E.2d 391, 399 (Ill. App. 2005), to the extent they hold otherwise.  The decisions in *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 936 (N.D. Ill. 2003), and *Lopez v. Smurfit-Stone Container Corp.*, 2003 WL 297533, at *3-5 (N.D. Ill. Feb. 10, 2003), are distinguishable because the plaintiffs there sought to enforce CBA rights above and beyond the rights provided by state law.

F.3d 599, 601 n.3 (7th Cir. 1993). IMWL regulations expressly provide that "[f]or guidance in

the interpretation of the [IMWL], the Director [of the Illinois Department of Labor] may refer to

the Regulations and Interpretations of the Administrator, Wage and Hour Division, U.S.

Department of Labor, administering the [FLSA]." 56 Ill. Admin. Code § 210.120; *see also*

*Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. 1987); *Villareal v. El Chile, Inc.*,

776 F. Supp. 2d 778, 784 (N.D. Ill. 2011). As Securitas acknowledges (Doc. 47 at 11 n.4),

FLSA case law is another source of guidance in IMWL cases. *See Lewis v. Giordano's Enters.,*

*Inc.*, 921 N.E.2d 740, 746 (Ill. App. 2009) ("federal cases interpreting the FLSA, while not

binding on this court, are persuasive authority and can provide guidance in interpreting issues

under the [IMWL]").

  The pertinent FLSA regulations provide that "[w]ork not requested but suffered or

permitted is work time," 29 C.F.R. § 785.11, and that "[i]f the employer knows or has reason to

believe that the work is being performed, he must count the time as hours worked," *id.* § 785.12.

Work is "suffered or permitted" if the employer has actual or constructive knowledge that it is

being performed. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011); *Erdman*

*v. Nationwide Ins. Co.*, 582 F.3d 500, 504 (3d Cir. 2009); *Reich v. Stewart*, 121 F.3d 400, 407

(8th Cir. 1997); *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996); *Newton v. City*

*of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Bjornson v. Daido Metal U.S.A., Inc.,* 12 F.

Supp. 2d 837, 842 (N.D. Ill. 1998). Moreover, if an employer knows that an employee has been

working overtime despite a rule prohibiting or limiting overtime, the work is compensable unless

the employer has taken affirmative steps to enforce the rule:

    In all such cases it is the duty of the management to exercise its control and
    see that the work is not performed if it does not want it to be performed. It
    cannot sit back and accept the benefits without compensating for them. The

> mere promulgation of a rule against such work is not enough. Management
> has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13; *see also Reich v. Dep't of Conversation & Natural Res., State of Ala.*, 28

F.3d 1076, 1083 (11th Cir. 1994) (given the employer's "specific knowledge that the ... policy

against overtime was not being followed, [it] had a duty to do more than to simply continue to

apprise the officers of the policy"; rather, it "had an obligation to exercise its control and see that

the work [was] not performed if it [did] not want it to be performed") (internal quotation marks

omitted); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) ("The employer who

wishes no such work to be done has a duty to see it is not performed. He cannot accept the

benefits without including the extra hours in the employee's weekly total for purposes of

overtime compensation. If the employer has the power and desire to prevent such work, he must

make every effort to do so."); *DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510905, at *3

(N.D. Ill. Aug. 10, 2011); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068,

1072 (N.D. Ill. 2005) (holding that employer "cannot hide behind a policy of having employees

keep their own time to avoid compensating the employees for all overtime hours worked,

including unrecorded hours").

What all this means is that the CBAs, with their "authorized by management" limitation

on overtime, are less generous to employees in calculating compensable overtime hours than is

the IMWL—that is, there are some hours that would qualify as compensable overtime under the

IMWL because the employer had actual or constructive knowledge of them and did not enforce a

rule prohibiting or restricting overtime, but would not so qualify under the CBAs because they

were not authorized by management. This difference between the IMWL and the CBAs is

irrelevant here, however, because the CBAs' "authorized by management" clause has no bearing

-10-

on the calculation of hours worked under the IMWL. The reason is that an employer cannot invoke a CBA to limit or negate superior wage rights granted employees under generally applicable state laws like the IMWL. As the Seventh Circuit recently explained: "Nothing that labor and management put in a collective bargaining agreement exempts them from state laws of general application. … Management and labor acting jointly (through a CBA) have no more power to override state substantive law than they have when acting individually." *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 429 (7th Cir. 2010). It follows that the court's resolution of the IMWL claim will not require interpretation of the "authorized by management" clause, which in turn means that the presence of the clause in the CBAs does not result in preemption.

Third, Securitas maintains that resolution of the IMWL claim would require interpretation and application of the CBAs' meal period provisions. Doc. 47 at 10-11 & n.4. That is incorrect. The FLSA, and thus the IMWL, establishes rules regarding the treatment of meal periods. *See Cannella v. Vill. of Bridgeview*, 673 N.E.2d 394, 401 (Ill. App. 1996) (citing 29 C.F.R. § 785.19). To the extent the CBAs' meal period provisions are less generous to employees than the rules applicable under the IMWL, the CBA provisions yield and therefore need not be consulted. *See Spoerle*, 614 F.3d at 429. And to the extent the CBAs' meal period provisions are more generous than the rules applicable under the IMWL, Plaintiffs are not seeking to enforce those provisions, again rendering them irrelevant to this suit. *See Caterpillar*, 482 U.S. at 394-95; *Rice*, 65 F.3d at 643; *Chavez*, 2010 WL 1417029, at *2.

Fourth, Securitas argues that the IMWL claims is "substantially dependent on analysis" of the CBAs because it pleaded an affirmative defense that Plaintiffs' claim falls under the terms of the CBAs, which require Plaintiffs to grieve and arbitrate those claims rather than filing suit.

-11-

Doc. 47 at 11, 13. But as noted above, Plaintiffs are not alleging here that Securitas violated the CBAs; all they allege are violations of the IMWL and the FLSA. And as shown above, Plaintiffs' claims do not fall under the CBAs, which means that the claims are not subject to the CBAs' grievance and arbitration requirements.

Finally, Securitas contends that because the CBAs set forth Plaintiffs' wage rates, the court must interpret the CBAs to calculate any damage award. Doc. 27 at 8, 10; Doc. 47 at 4-5, 10. Securitas' premise is right, but its conclusion is not. As noted above, the Seventh Circuit has held that preemption is unwarranted "where reference to the CBA is only necessary for computing damages." *Wis. Cent.*, 539 F.3d at 758; *see also Chavez*, 2010 WL 1417029, at *4. Looking up Plaintiffs' classifications and wage rates in the CBAs, and multiplying those figures by 1.5 for each hour of uncompensated overtime, does not require "interpretation" of the CBAs. This is particularly so because Plaintiffs have agreed that their pay stubs—which were prepared by Securitas—reflect their correct hourly wages. Doc. 46 at 8.

For these reasons, Securitas' Rule 12(b)(1) motion to dismiss, whether considered as a true Rule 12(b)(1) motion or whether construed as a motion under Rules 12(b)(6), 12(c), or 56, is denied.

October 28, 2011

_____
United States District Judge