| | | |
|---|---|---|
| STEPHANIE HAWKINS, DARSEMIA JACKSON, and MERIJA WALLACE, individually and on behalf of those similarly situated, | ) ) ) | |
| | ) | 09 C 3633 |
| Plaintiffs, | ) | |
| | ) | Judge Feinerman |
| vs. | ) | |
| | ) | |
| SECURITAS SECURITY SERVICES USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Stephanie Hawkins, Darsemia Jackson, and Merija Wallace filed this suit against Defendant Securitas Security Services USA, Inc., for whom they worked as hourly, non-exempt uniformed security officers. The complaint alleges that Plaintiffs performed three categories of off-the-clock work for Securitas: (1) mandatory training and orientation; (2) work performed before and after their shifts; and (3) cleaning and maintaining their uniforms. Plaintiffs maintain that Securitas' failure to pay them for this off-the-clock work violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*.

The court dismissed Wallace as a party plaintiff on judicial estoppel grounds. 2011 WL 2837269 (N.D. Ill. July 18, 2011). The court then denied Defendants' motion to dismiss the IMWL claim as preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). 2011 WL 5122679 (N.D. Ill. Oct. 28, 2011). Knowledge of the memorandum opinion and order denying dismissal of the IMWL claim is presumed. Now before the court is Plaintiffs'

motion under Federal Rule of Civil Procedure 23 for class certification on the IMWL claim. The motion defines the proposed class as:

> All individuals who were employed or are currently employed by Defendant, its subsidiaries or affiliated companies, in the state of Illinois as hourly paid, non-exempt, uniformed security officers or other similarly titled positions at any time during the relevant statute of limitations period.

Doc. 11 at 1.

Class certification is granted in part and denied in part. Certification is inappropriate insofar as the IMWL claim seeks relief for two categories of off-the-clock work: pre- and post-shift work, and uniform cleaning/maintenance. Certification is appropriate insofar as the IMWL claim seeks relief for the third category of off-the-clock work: time spent in mandatory training and orientation. (For ease of reference, the three categories of off-the-clock work will be referred to "claims" in and of themselves.) Although Plaintiffs did not ask that the class be narrowed if their proposal were deemed too broad, the court has the discretion to narrow the class. *See In re Motorola Sec. Litig.*, 644 F.3d 511, 519 (7th Cir. 2011) ("a district court has the authority to modify a class definition at different stages in litigation"); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions, so the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed"). For the reasons given below, the court has chosen to exercise that discretion and certify a class for the training/orientation claim only.

### Background

This case has been consolidated for discovery purposes with *Howard v. Securitas Security Services, USA Inc.*, No. 08 C 2746. *See Howard*, Doc. 259 (Oct. 26, 2009) (Gottschall,

J.) (finding that both cases "raise analogous legal and factual claims against the same defendant"). Like Plaintiffs here, the *Howard* plaintiffs allege that Securitas wrongfully failed to pay them for the three categories of off-the-clock work described above; unlike Plaintiffs here, the *Howard* plaintiffs seek relief only under the FLSA. The court conditionally certified *Howard* to proceed as a collective action under 29 U.S.C. § 216(b). 2009 WL 140126 (N.D. Ill. Jan. 20, 2009) (Gottschall, J.). Over eleven hundred Securitas employees—but not Hawkins and Jackson, the two remaining Plaintiffs here—have opted into the *Howard* collective action.

After the cases were consolidated, both sides selected two security officers from each of Securitas' thirteen Illinois branches from whom discovery would be taken. The purpose of the discovery was to adduce a record that would enable the court to determine whether to decertify the *Howard* collective action if and when Securitas files a decertification motion; the discovery is equally useful in assisting the court with Plaintiffs' class certification motion. Both sides have submitted numerous briefs and voluminous exhibits. Rather than summarize the evidence here, the court will refer to specific facts in the course of its analysis.

## Discussion

To be certified, a proposed class must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication

would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

The named plaintiff bears the burden of showing that each requirement is satisfied. *See Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks omitted). Although "as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained[,] ... the boundary between a class determination and the merits may not always be easily discernible," and "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Retired Chi. Police*, 7 F.3d at 598-99 (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (class certification analysis "[f]requently … will entail some overlap with the merits of the plaintiff's underlying claim"). As the Seventh Circuit has held, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011). The Seventh Circuit has directed district courts to exercise "caution" before deciding to certify a class. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

## I. Training/Orientation Claim

### A. Rule 23(a)(1): Numerosity

Securitas, which had over ten thousand employees in Illinois, does not dispute that the numerosity requirement is satisfied.

### B. Rule 23(a)(2): Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that "[t]heir claims … depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks omitted). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 2556 (internal quotation marks and alterations omitted). "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano*, 633 F.3d at 585; *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). Commonality is easily satisfied for the training claim, which presents the common factual question of whether Securitas required its employees to undergo training and orientation and the common legal question of whether the time spent on training and orientation is compensable under the IMWL.

### C. Rule 23(a)(3): Typicality

The typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police*, 7 F.3d at 596-97. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his

or her claims are based on the same legal theory." *De la Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (internal quotation marks omitted). Hawkins testified that she underwent eight hours of training for which she was not compensated. Doc. 53 at 15. Jackson testified that she underwent sixteen hours of unpaid training and between four and eight hours of orientation for which she was not compensated. *Id*. at 25-26. The evidence suggests that Securitas employees generally underwent between eight and twenty-four hours of training and orientation. Doc. 24 at 34-35 (citing evidentiary materials); Doc. 60 at 23-26 (same). Both named plaintiffs therefore are typical with respect to the training/orientation claim. *See Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (holding that typicality was satisfied by a common allegation that employees worked uncompensated overtime); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, at *5 (N.D. Ill. Dec. 1, 2000) ("Plaintiff's and the class members' claims arise out of the same allegedly unlawful conduct—defendants' failure to pay wages for hours worked and overtime rates.").

Securitas contends that Jackson is not typical because she worked as a site supervisor. Although supervisory personnel may be atypical in some circumstances, *see*, *e.g.*, *Wells v. Ramsay, Scarlett & Co.*, 506 F.2d 436 (5th Cir. 1975), the managerial component of Jackson's position is irrelevant for purposes of the training/orientation claim because Jackson was subjected to the same training/orientation requirements and wage practices as the absent class members. In any event, "typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (internal quotation marks omitted); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). It follows that

Jackson's supervisory status does not undermine her typicality. *See Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008) ("Factual differences will not defeat typicality *if* the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory.").

### D.      Rule 23(a)(4): Adequacy

The Rule 23(a)(4) adequacy inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Both are addressed in turn.

#### 1.      The Named Plaintiffs

A named plaintiff is inadequate if her interests are "antagonistic or conflicting" with those of the absent class members, *Rosario*, 963 F.2d at 1018, or if she is subject to a defense not applicable to the class as a whole, *see CE Design*, 637 F.3d at 726. *See also Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011); *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994); *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974). "A named plaintiff who has serious credibility problems … [also] may not be an adequate class representative." *CE Design*, 637 F.3d at 726. Securitas offers several challenges to the adequacy of Hawkins and Jackson, none of which persuade.

First, Securitas argues that Hawkins and Jackson are inadequate because they, unlike most of the putative class members, are union members and thus are subject to a preemption defense under the LMRA. Because the court has rejected Securitas' preemption defense, 2011 WL 5122679 (N.D. Ill. Oct. 28, 2011), the defense cannot defeat adequacy. *See Weil v. Long Island Sav. Bank FSB*, 200 F.R.D. 164, 169-70 (E.D.N.Y. 2001).

Second, Securitas contends that Hawkins is inadequate because she initially failed to appear for her deposition and, when ordered to appear, asked that she be removed as a named plaintiff in this case. To support its contention, Securitas cites *Weizeorick v. ABN AMRO Mortg. Grp., Inc.*, 2004 WL 1880008 (N.D. Ill. Aug. 3, 2004), which held a proposed class representative inadequate due to "her willingness to abandon the suit rather than sit for a deposition." *Id*. at *5. *Weizeorick* is distinguishable because Hawkins ultimately sat for a deposition; she attributed her earlier failure to appear to the short notice given by Securitas' counsel and to a then-recent move to Louisiana. *Howard*, 08 C 2746 (N.D. Ill.), Doc. 324 at 4-5 (June 8, 2010). It is true that before Hawkins sat for her deposition, class counsel asked the court to "dismiss [her] as a named Plaintiff." *Id*. at 5. But the court declined to dismiss Hawkins. *Howard*, 08 C 2746 (N.D. Ill.), Doc. 326 (June 10, 2010). Moreover, as Securitas acknowledges, Hawkins later testified at her deposition that she never intended to withdraw as a named plaintiff. Doc. 98 at 3. Accordingly, there is no present reason to doubt that Hawkins "has sufficient interest in the outcome of the litigation to ensure vigorous advocacy." *Weizeorick*, 2004 WL 1880008, at *5.

Third, Securitas contends that Jackson is inadequate because she overslept on the day her deposition was first scheduled. While Jackson's lapse was hardly commendable, she later appeared and sat for a deposition. Securitas adds that Jackson displayed a lack of diligence by not opting in to the *Howard* FLSA action. But Jackson was under no obligation to choose *Howard* as the vehicle for vindicating her wage claims, and Securitas cites no authority for the proposition that a proposed class representative is inadequate for failing to participate in prior, related litigation.

Fourth, Securitas contends that Jackson is inadequate because she was disciplined for falsifying a time record (recording start time of 3:30 when she did not arrive until 3:50) and was subject to multiple counseling and corrective action reports. As noted above, the Seventh Circuit held in *CE Design* that severe credibility problems can defeat a proposed class representative's adequacy. But *CE Design* added that "few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished. For an assault on a class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." 637 F.3d at 728; *see also People United for Children, Inc. v. City of New York*, 214 F.R.D. 252, 264 (S.D.N.Y. 2003) ("In order to defeat certification, credibility problems must be so substantial that they call the validity of the plaintiffs' entire case into question.") (internal quotation marks omitted). As an initial matter, Jackson's alleged dishonesties and bad acts are likely inadmissible under Federal Rules of Evidence 403 and 608(b). Even if admissible, the evidence does not rise to the level articulated in *CE Design*, particularly given that the only factual questions at trial will be whether Jackson engaged in Securitas-required training and orientation and whether she was paid for it, questions whose resolution will depend largely on documentary evidence like Securitas' written policies and attendance and payroll records.

Finally, Securitas argues that Jackson is inadequate because she believes she is entitled to additional compensation for serving as the class representative. That argument is meritless. Incentive awards for class representatives are common. *See Karraker v. Rent-a-Center, Inc.*, 492 F.3d 896, 899 (7th Cir. 2007). Such awards provide compensation to the class representative for time spent testifying at deposition and perhaps at trial, and also for subjecting herself to the

"slight risk of being made liable for sanctions, costs, or other fees should the suit go dangerously awry." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Although the court cannot say in advance whether Jackson will receive an incentive award if Plaintiffs prevail or settle, Jackson's hope for such an award does not undermine her incentive to vigorously pursue the training/orientation claim on behalf of the class.

### 2. Class Counsel

Class certification may be denied under Rule 23(a)(4) if "the lawyer, through breach of his fiduciary obligations to the class, or otherwise, demonstrates that he is not an adequate representative of the interests of the class as a whole." *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (internal citations omitted). Securitas contends that class counsels' inadequacy is demonstrated by various missteps they committed in *Howard* and in this case, including delays in making certain filings and producing certain discovery, failing to amend the *Howard* complaint to add an IMWL claim, failing to amend the complaint in this case to name individual Securitas officers as defendants, and the magistrate judge's criticism of an in-court statement made by one attorney. Having carefully reviewed the incidents referenced by Securitas, the court concludes that each alleged instance of deficient representation did not prejudice the class and that the situation with the magistrate judge (for which the magistrate judge declined to impose sanctions) resulted more from a simple misunderstanding than from an intent to mislead. Moreover, based on the unrebutted materials submitted with the class certification motion, the court finds that class counsel is sufficiently experienced in class actions and wage-and-hour litigation to adequately and fairly protect the interest of the class. Docs. 18-6, 18-7 (listing counsel's experience in prior class actions).

### E.    Rule 23(b)(3): Predominance and Superiority

With respect to Rule 23(b), Plaintiffs contend that they may proceed under both Rule 23(b)(1) and Rule 23(b)(3). The Seventh Circuit has made clear that Rule 23(b)(1)—which unlike Rule 23(b)(3) allows for class certification without providing notice or opt-out rights to the class—is inappropriate in damage actions not involving a limited fund. *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 897 (7th Cir. 1999). Because the principal relief sought here is damages and there is no limited fund that must be distributed ratably, Plaintiffs cannot seek certification under Rule 23(b)(1). Rule 23(b)(3) is their only available option.

A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors pertinent to predominance and superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; © the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Ibid*.

### 1.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). While similar to the Rule 23(a)(2) commonality requirement, the predominance requirement is "far more demanding." *Id*. at 624. Predominance is not satisfied

where liability determinations are individual and fact-intensive. *See Kartman*, 634 F.3d at 891.

Predominance also fails where "affirmative defenses will require a person-by person evaluation

of conduct to determine whether [a defense] precludes individual recovery." *Clark v. Experian*

*Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 Fed. Appx. 818 (7th Cir. 2007); *see*

*also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("while it is well established that

the existence of a defense potentially implicating different class members differently does not

*necessarily* defeat class certification, it is equally well established that courts must consider

potential defenses in assessing the predominance requirement") (internal citations omitted).

The predominance requirement is satisfied for the training/orientation claim. The most

significant factual issue is whether Securitas required its employees to undergo training and

orientation, and the most significant legal issue is whether the time spent in training and

orientation is compensable under IMWL. Both issues can be resolved on a classwide basis.

Securitas argues that the training took place during a pre-employment period, when the putative

class members were trainees, and therefore that training is non-compensable under the IMWL;

this, however, is a common legal issue subject to classwide resolution. Securitas also points to

differences in the location and subject matter of the training offered to its employees, but it

provides no reason why those differences are pertinent to whether the training is compensable.

Securitas likewise points to differences in the duration of the putative class members' training

sessions, but this impacts damages, not liability, and thus does not defeat predominance. *See*

*Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010); *Arreola v. Godinez*, 546 F.3d 788,

801 (7th Cir. 2008) ("Although the extent of each class member's personal damages might vary,

district judges can devise solutions to address that problem if there are substantial common

issues that outweigh the single variable of damages amounts."); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

Securitas' arguments regarding its defenses are equally unpersuasive. Securitas contends that it is entitled to an offset for any unpaid worktime to the extent it paid putative class members for uninterrupted meal periods, which are not compensable worktime. The pertinent FLSA regulation—which applies with full force to IMWL claims, *see Hawkins*, 2011 WL 5122679, at *5 (citing cases); 56 Ill. Admin. Code § 210.120—provides that "[b]ona fide meal periods are not worktime," and that "[o]rdinarily 30 minutes or more is long enough for a bona fide meal period" so long as the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a). As will be shown below, the offset defense raises a predominant individual issue for the pre-shift/post-shift claim; depending on an employee's work schedule, Securitas could contend that the employee's compensated thirty-minute lunch breaks completely offset fifteen minutes of off-the-clock work performed both before and after each shift, thus eliminating liability on that claim. *See Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996); *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1344 (11th Cir. 1994). The same cannot be said of the training/orientation claim. The record indicates that Securitas officers generally underwent eight to twenty-four hours of training at the outset of their tenure. Doc. 24 at 34-35; Doc. 60 at 23-26. That time could not be completely offset by compensated lunch breaks during the day or week that training or orientation took place. Thus, while the offset defense might reduce the damages available on the training/orientation claim, it would not eliminate liability.

Nor does Securitas' *de minimis* defense raise a predominant individual issue for the training/orientation claim. The governing regulation provides:

> In recording working time …, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded.  The courts have held that such trifles are *de minimis*.  This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities.

29 C.F.R. § 785.47.  Because the time spent in training and orientation far exceeded "a few seconds or minutes" each day, the *de minimis* defense does not provide a viable defense to the training/orientation claim.

### 2.    Superiority

Securitas' argument against superiority turns largely on its view that class certification of Plaintiffs' IMWL claim is categorically incompatible with the pursuit in *Howard* of a materially identical FLSA claim using the collective action mechanism under 29 U.S.C. § 216(b).  At this point, *Howard* and this case have been consolidated only for purposes of discovery.  But even if this case and *Howard* are consolidated for trial—a distinct possibility, and even a likelihood, given Judge Gottschall's ruling that both actions "can likely be resolved in a single proceeding because they raise analogous legal and factual claims against the same defendant," *Howard*, Doc. 259 (Oct. 26, 2009)—the Seventh Circuit has flatly rejected the notion that a single case cannot accommodate an IMWL class action and a FLSA collective action.  In *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971 (7th Cir. 2011), the court held that "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA," and that "the question whether a class should be certified under Rule 23(b)(3) will turn—as it always does—on the application of the criteria set forth in the rule."  *Id.* at 973-74.

The generally applicable superiority requirements are satisfied here. Resolving the training/orientation claim on a classwide basis presents no significant difficulties in terms of case management, as individual damage issues—which will be mooted if Securitas prevails on liability—can be resolved through the use of a special master or claims administrator. "[C]lass certification is a 'sensible and legally permissible alternative to … individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs.'" *Pella Corp.*, 606 F.3d at 393 (quoting *Thorogood*, 547 F.3d at 748). That consideration weighs heavily in favor of certification where, as here, each class member's recovery on the training/orientation claim is likely to be small. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Securitas appears to suggest that if the IMWL claim were certified for class treatment, the court would lose supplemental jurisdiction because only the two named plaintiffs has a federal claim. Although Plaintiffs respond that diversity jurisdiction lies over the IMWL claim pursuant the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), it is unnecessary to reach the CAFA issue because supplemental jurisdiction is appropriate under 28 U.S.C. § 1367. In *Ervin*, the Seventh Circuit held that "the requirements of section 1367(a) are satisfied in cases … where state-law labor claims are closely related to an FLSA collective action." 632 F.3d at 979. *Ervin* observed that § 1367(c)(2) "permits a court to decline supplemental jurisdiction if the state-law claims 'substantially predominate' over the federal action." *Id.* at 980. Whether

the state law claims "substantially predominate" turns not on "[a] simple disparity in numbers," but on "the type of claim," meaning that if "the state law claims essentially replicate the FLSA claims[,] they plainly do not predominate." *Ibid.* (internal quotation marks omitted). That is precisely the situation presented here, where Plaintiffs' individual FLSA claims are, as a substantive matter, materially identical to the IMWL claim. Moreover, as noted above, there is a significant chance that the *Howard* FLSA collective action, with its more than 1100 opt-in plaintiffs, will be tried together with this case, thereby reducing the disparity in the number of individuals seeking relief under the two statutes.

## II.     Pre-Shift/Post-Shift Work and Cleaning/Maintaining Uniform Claims

The pre-shift/post-shit work claim alleges that Securitas officers were not paid for "arriving at work before the start of their shift to prepare for work, inspect equipment, line up for inspection, prepare paperwork, review post orders, and receive pass down and other instructions, amongst other things," or for time spent "holding over" after their shifts waiting for a replacement officer to arrive. The claim further alleges that Securitas had an unwritten policy encouraging such work, and that employees performed this uncompensated work with Securitas' knowledge. Individual issues predominate over common issues with respect to this claim.

IMWL regulations define "hours worked" as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110. The parallel FLSA regulations—which as noted above apply to IMWL claims—provide that "[w]ork not requested but suffered or permitted is work time," 29 C.F.R. § 785.11, and that "[i]f the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked," *id*. § 785.12. Work is "suffered or

permitted" if the employer has actual or constructive knowledge that it is being performed.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 504 (3d Cir. 2009); *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997); *Bjornson v. Daido Metal U.S.A., Inc.,* 12 F. Supp. 2d 837, 842 (N.D. Ill. 1998).  Moreover, if an employer knows that an employee has been working overtime despite a rule prohibiting or limiting overtime, the work is compensable unless the employer has taken affirmative steps to enforce the rule.  *See* 29 C.F.R. § 785.13; *Reich v. Dep't of Conversation & Natural Res., State of Ala.*, 28 F.3d 1076, 1083 (11th Cir. 1994) (given the employer's "specific knowledge that the ... policy against overtime was not being followed, [it] had a duty to do more than to simply continue to apprise the officers of the policy"; rather, it "had an obligation to exercise its control and see that the work [was] not performed if it [did] not want it to be performed") (internal quotation marks omitted); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) ("The employer who wishes no such work to be done has a duty to see it is not performed.  He cannot accept the benefits without including the extra hours in the employee's weekly total for purposes of overtime compensation.  If the employer has the power and desire to prevent such work, he must make every effort to do so."); *Skelton v. Am. Intercont'l Univ. Online*, 382 F. Supp. 2d 1068, 1072 (N.D. Ill. 2005) (holding that an employer "cannot hide behind a policy of having employees keep their own time to avoid compensating the employees for all overtime hours worked, including unrecorded hours").

Securitas provides security officers to its various clients at numerous locations throughout the region.  Having been assigned to different work sites, individual security officers in the putative class worked under different circumstances and were managed by different personnel.  As a result, whether Securitas had actual or constructive knowledge that any given

employee was performing pre-shift or post-shift work, and the amount of work of which Securitas had knowledge, are issues that defy resolution on a classwide basis. One security officer working at a Chicago Transit Authority site, Robert Newson, testified that he generally arrived fifteen minutes ahead of his scheduled shift and that his supervisor would give him his security dog during that time. Doc. 35-3 at 18. But Newson testified that on other occasions he was given the dog "sometime[] after" the scheduled start of a shift and that he would engage in personal conversation with other officers before his shift. *Ibid*. Newson further testified that he was never disciplined for failing to arrive fifteen minutes early and that "no one told [him]" that he had to arrive fifteen minutes early. *Ibid*. Whether Newson's pre-shift work was "suffered or permitted" under the governing standard presents a far different question than that presented by David Damm, who worked at a Menards job site and who was specifically instructed to arrive fifteen minutes early and always did so. Doc. 53 at 83. Another officer, Raymond Alberty, testified that he generally arrived ten to fifteen minutes early for his shifts at a Home Depot site, but that "[s]ometimes [he] made it on the money" and that when he did he would be subject to "gestures … implying 'don't let it happen again.'" Doc. 35-9 at 4-5 (internal quotation marks added). However, Alberty later worked as a security officer at a different site, Pactiv, where he "tried" to arrive ten to fifteen minutes early but was not actively encouraged to do so or reprimanded for failing to do so. When he did arrive early, because Pactiv "was a remote site," he would simply sit in his car or "[s]hoot the breeze" with other security officers, not performing any work-related functions and apparently not conspicuous to management. Doc. 35-9 at 15-16.

Variations like these are legion among the Securitas officers who gave depositions. Alberty, while working at Home Depot, would have a stronger claim than Newson but a weaker claim than Damm. For his time at Pactiv, however, Alberty's claim would be the weakest of

them all, as there is little reason to believe that he was instructed to work prior to his shift or that Securitas was aware that he was even at the job site. Like Damm, named plaintiff Jackson was instructed to arrive fifteen to thirty minutes early. Doc. 53 at 28-29. For her part, named plaintiff Hawkins testified that the unwritten rule about arriving early was conveyed to her by "[o]ther associates and other employees in the company … at the same level of command as [me] … other security officers," which casts some doubt on the notion that Securitas *management* directed her to arrive early or had knowledge that she arrived early. Doc. 53 at 9-10. These variations compel the conclusion that whether Securitas was aware that a particular employee performed pre- or post-shift work—and thus whether the work was compensable—is a question driven by individual factual circumstances. *See Kartman*, 634 F.3d at 891 ("[T]o prove State Farm committed the tort of bad faith, the plaintiffs must establish that their claims were underpaid—or wrongfully denied—in the first place. This requirement alone bars class certification because it cannot be established on a class-wide basis.") (internal citation omitted); *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007) ("when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment"). Resolving that question for Hawkins and Jackson (or any other class representative) would not provide a uniform answer for the rest of the class, which defeats predominance.

Two defenses to the pre-shift/post-shift claim also present individual issues that cannot be resolved on a classwide basis. Under the offset defense, which is discussed above, Securitas might be entitled to offset a putative class member's compensable pre- and post-shift work to the extent it paid that individual for uninterrupted meal breaks that do not qualify as worktime under 29 C.F.R. § 785.19(a). Whether any particular Securitas officer could take an uninterrupted

meal break presents individualized issues. Larry Smith, for example, testified that he ate at his desk but that his lunches were interrupted only five percent of the time. Doc. 35-10 at 11-12. Whether Smith was "completely relieved from duty" during his lunch break, 29 C.F.R. § 785.19(a), varied from day to day. Alberty generally ate meals in his car or in a break room, but was not tasked with job-related duties while he did so. Doc. 35-9 at 12-14. Anthony Muno, by contrast, testified that "on average once a meal period there would be some sort of interruption." Doc. 35-12 at 23. And Crystal Howard testified that she received uninterrupted meal breaks. Doc. 36-2 at 14-16. Because the offset "defense turns on questions … that cannot be resolved on a classwide basis and that would overwhelm any efficiencies gained by trying common issues in a class proceeding," Rule 23(b)(3) is not satisfied. *Wooley v. Jackson Hewitt Inc.*, 2011 WL 1559330, at \*11 (N.D. Ill. Apr. 25, 2011); *see also Clark*, 233 F.R.D. at 512.

The second defense is the *de minimis* defense, also discussed above. Whether work time is *de minimis* under 29 C.F.R. § 785.47 turns on three factors: "(1) the practical administrative difficulty of recording additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Bartoszewski v. Vill. of Fox Lake*, 647 N.E.2d 591, 595-96 (Ill. App. 1995); *see also Singh v. City of New York*, 524 F.3d 361, 370-72 (2d Cir. 2008). Under these factors, whether a given security officer is subject to the *de minimis* defense depends entirely on her individual circumstances. An officer who arrived fifteen minutes early for every shift almost certainly would not be subject to the defense; an officer who arrived five minutes early for nearly every shift might be; and an officer who only occasionally arrived five minutes early almost certainly would be. *See Bartoszewski*, 647 N.E.2d at 596 (defense does not apply where the employees participated in a daily ten-minute roll call prior to their scheduled

-20-

shift).  The applicability of this defense, and thus liability on the pre-shift/post-shit work claim, cannot be resolved on a classwide basis.

It bears mention that the three individual issues defeating predominance for the pre-shift/post-shift work claim—whether Securitas had actual or constructive knowledge of the work, whether the work is subject to an offset due to an officer being paid for uninterrupted meal breaks, and whether the work is subject to the *de minimis* defense—all go to liability, not damages.  It is difficult to see what a classwide trial would accomplish; liability as to each putative class member would depend on a fact-intensive examination, undertaken after the class trial concludes, into the details of each employee's individual circumstances.  The claim is ill-suited to class resolution.  *See Williams v. Securitas Sec. Services USA, Inc.*, 2011 WL 3629023, at *3-4 (E.D. Pa. Aug. 17, 2011) (denying conditional certification of a FLSA collective action, under a standard much lower than that imposed by Rule 23, of a materially identical pre-shift/post-shift work claim against Securitas).

The same holds for the uniform cleaning/maintenance claim.  The governing regulation provides that "[i]f the employees are required to wear uniforms … by the employer, … then the cost of furnishing and maintaining the uniforms is deemed to be a business expense of the employer and such cost may not be borne by the employees."  29 C.F.R. § 4.168(b)(1).  The regulation goes on to say, however, that "there generally is no requirement that employees be reimbursed for uniform maintenance costs in those instances where the uniforms furnished are made of 'wash and wear' materials which may be routinely washed and dried with other personal garments, and do not generally require daily washing, dry cleaning, commercial laundering, or any other special treatment because of heavy soiling in work usage or in order to meet the cleanliness or appearance standards set by … the nature of the work."  *Id.*

§ 4.168(b)(2); *see generally Williams*, 2011 WL 3629023, at *5. Thus, whether the time a Securitas employee spent cleaning or maintaining a uniform is compensable depends on whether the uniform is made of "wash and wear" materials that may be washed and dried with other garments and do not require any special washing or treatment.

This inquiry requires an individualized examination into the facts and circumstances of each employee's uniform and cleaning/maintenance habits, and thus cannot be resolved on a classwide basis. For example: Howard, William Thurman, and James West ironed their uniforms; Roy Napier ironed his pants, but nobody at Securitas instructed him to do so; Damm's uniform consisted of a flannel shirt, blue jeans, and tennis shoes, which he washed with his other clothes; Alberty washed his uniform with other personal items; and Muno washed his uniform with his other clothes and shined his shoes, but only while on the job. Doc. 45 at 21-23. It is inconceivable that a decision on any class representative's entitlement to pay for cleaning and maintaining her uniform could be generalized across the class as a whole. The offset defense adds an additional individual issue; depending on a given officer's work schedule, Securitas could argue that paid uninterrupted meal periods offset any time the officer spent cleaning and maintaining her uniform. It follows that the uniform cleaning/maintenance claim is inappropriate for certification under Rule 23. *See Williams*, 2011 WL 3629023, at *5-6 (denying conditional certification of a FLSA collective action of a materially identical uniform cleaning/maintenance claim against Securitas); *Doyel v. McDonald's Corp.*, 2010 WL 3199685, at *7-8 (E.D. Mo. Aug. 12, 2010) (denying class certification of uniform cleaning/maintenance claim under a Missouri statute analogous to the IMWL).

**Conclusion**

The parties make numerous other arguments in support of their positions, but none are weighty enough to warrant separate discussion. For the foregoing reasons, Plaintiffs' motion for class certification is granted in part and denied in part. The following class is certified:

> All individuals who were employed or are currently employed by Defendant, its subsidiaries or affiliated companies, in the State of Illinois as hourly paid, non-exempt, uniformed security officers or other similarly titled positions who attended mandatory training or orientation programs at Defendant's direction for any period of time during the relevant statute of limitations period.

Stephanie Hawkins and Darsemia Jackson are appointed as class representatives. Stephen Zouras, LLP, Miller Law LLC, and The Law Offices of Thomas M. Ryan, P.C., are appointed as class counsel. The parties are respectfully requested to confer regarding a proposed notice and to submit their proposal(s) to the court.

November 16, 2011 _____

United States District Judge