12.07.11 Transcript re Proceeding before Judge Feinerman

1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
     STEPHANIE HAWKINS, DARSEMIA    )
 4   JACKSON, and MERIJA WALLACE,   )
     individually and on behalf     )
 5   of all other similarly        )
     situated,                      )
 6                                  )   Case No. 09 C 3633
                      Plaintiffs,  )
 7                                  )   Chicago, Illinois
         -vs-                       )   December 7, 2011
 8                                  )   9:00 a.m.
     SECURITAS SECURITY SERVICES,   )
 9   USA, INC.,                     )
                                    )
10                    Defendant.    )

11              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE GARY FEINERMAN
12
     APPEARANCES:
13
     For the Plaintiffs:   MILLER LAW, LLC
14                         BY:  MR. MATTHEW E. VAN TINE
                           115 South LaSalle Street
15                         Suite 2910
                           Chicago, Illinois   60603
16                         (312) 332-3400

17                         STEPHAN ZOURAS, LLP
                           BY:  MR. JAMES B. ZOURAS
18                         205 North Michigan Avenue
                           Suite 2560
19                         Chicago, Illinois   60601
                           (312) 233-1550
20

21
     Court Reporter:
22
                     CHARLES R. ZANDI, CSR, RPR, FCRR
23                        Official Court Reporter
                       United States District Court
24              219 South Dearborn Street, Room 1728
                        Chicago, Illinois   60604
25                     Telephone:  (312) 435-5387
             email:  Charles_zandi@ilnd.uscourts.gov
```

2

```
 1   APPEARANCES:   (Continued)

 2   For the Defendant:    K & L GATES, LLP
```

Page 1



EXHIBIT A

12.07.11 Transcript re Proceeding before Judge Feinerman

```
                              BY:  MR. JOHN T. ROACHE
 3                                 70 West Madison Street
                                   Suite 3100
 4                                 Chicago, Illinois  60602
                                   (312) 372-1121
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

        3

1    (Proceedings heard in open court:)

2    THE CLERK: 09 C 3633, Hawkins versus Securitas

3  Security Services.

4    MR. VAN TINE: Good morning, your Honor. Matthew

5  Van Tine for the plaintiffs.

6    MR. ZOURAS: Jim Zouras, your Honor, good morning,

12.07.11 Transcript re Proceeding before Judge Feinerman
7   for the plaintiffs.

8       MR. ROACHE: Good morning, your Honor. John Roache
9   on behalf of the defendant.

10      THE COURT: Good morning. So, we have a renewed
11  motion for class certification on the uniform maintenance
12  claim. And it's for a narrow class of the folks who don't
13  have -- who didn't wear wash-and-wear uniforms.

14      My question -- I have two questions. One has to do
15  with ascertainability, and the other one has to do with the
16  individual issue regarding the lunch offset.

17      First, how -- is this class or narrow class
18  ascertainable, readily ascertainable based upon records that
19  can easily be consulted where you can put people in one
20  category, the hard-look category or the wash-and-wear
21  category?

22      MR. ZOURAS: Yes, your Honor, it is ascertainable.
23  One thing we do know is that the defendant does maintain
24  records on the types of uniforms they issue to their
25  employees. They have specific categories, hard-look,

                                                              4

1   soft-look, and other. Ascertainability is a very easy issue.
2       THE COURT: And what -- and I'll give you a chance to
3   address this in a second.
4       What about the -- that was one of the two grounds for
5   denying class certification of the broader class. What about
6   the second ground, which is the lunch offset, even for -- I
7   guess I didn't address the narrowed class because it wasn't
8   proposed, but the lunch offset would apply with equal force to
9   the narrowed class. What do you have to say about that?
10      MR. ZOURAS: Well, we have a couple of things, your
11  Honor. First of all, there are no records indicating when

Page 3

12.07.11 Transcript re Proceeding before Judge Feinerman

12  people took lunches, if ever. The testimony, the evidence is
13  that these people couldn't take a lunch break in any event
14  because they were required to be on duty at all times.
15          So, at least for the majority, the overwhelming
16  majority of the employees, they eat their lunch while on duty
17  at their post at their sites. So, we do not see that as a
18  valid, even arguable offset possibility.
19          We believe that in order to have an offset, in any
20  event, they have to come forward with their records showing
21  that they're entitled to an offset because these folks did, in
22  fact, take a break. They don't have those records.
23          MR. VAN TINE: The legal standard for a lunch --
24  well, for whether a lunch needs to be compensated or not is
25  whether there are 20 or 30 minutes of uninterrupted time that

                                                                5

1   the employee is free to do what he does -- what he wants to
2   do. These guards are overwhelmingly on call, required, as
3   Mr. Zouras said, to be at their post, and do not get an
4   uninterrupted 20- or whether the standard is 30-minute break
5   that they could just go to Walgreen's and run an errand, for
6   example.
7           THE COURT: Well, didn't -- let me -- you have a
8   factual issue and then a legal issue. On the factual issue,
9   which is your suggestion that all the Securitas security
10  officers were required to stay at their desk, weren't there
11  certain individuals who were deposed who testified that they
12  were able to go to a lunchroom or able to eat lunch in their
13  truck or their car?
14          MR. ZOURAS: There was a minority of guards who
15  testified to that effect, your Honor. We are not saying and

12.07.11 Transcript re Proceeding before Judge Feinerman

16   we don't believe that we are required to prove that every
17   single individual did not have the opportunity to have a lunch
18   break or did have a lunch break. What we are saying is that
19   the majority of folks were not given a 20- to 30-minute
20   uninterrupted break.
21          THE COURT: See, I think that's something that the
22   defendant would argue in saying that, "Well, majority, it's
23   not uniform," no pun intended, "and, therefore, it presents an
24   individual issue that's not susceptible to class resolution."
25          And if you were to argue that, what would your

                                                                6

1    response be?
2           MR. ZOURAS: Well, our response would be that we
3    can't decide these cases based on the experiences of a few.
4    It has to be based on the experiences of the majority. And
5    when we say the majority, we're not saying 51 percent or
6    60 percent. We're really looking at 90 percent.
7           There's always exceptions in cases involving hundreds
8    or thousands of people where specific individuals at specific
9    posts, for whatever reason, are entitled to go to the
10   cafeteria and so forth. That certainly is subject for
11   cross-examination at trial, and based on representative
12   testimony, they are free to do that. They are free to say
13   that, "Look, there's a certain percentage that wouldn't be
14   entitled to any recovery in their view because of these
15   offsets."
16          THE COURT: But that would be after the class was
17   certified.
18          MR. ZOURAS: Yes, your Honor.
19          THE COURT: You've got to -- and I agree with you
20   that if it's a situation where there are a thousand class

12.07.11 Transcript re Proceeding before Judge Feinerman

21 members or potential class members and there's a few outliers
22 here and there, that's not going destroy the class. But what
23 basis do you have for saying that this -- the lunch break not
24 at the desk people are an extremely insignificant minority as
25 opposed to a non-trivial minority of the potential class?

7

1       MR. ZOURAS: Well, unfortunately, we're using a lot
2 of vague concepts in terms of trivial and insignificant
3 majority. All we can do is express to your Honor what the
4 evidence shows, that, yes, we have seen a couple of people
5 deposed here and there who said that they were able to walk
6 away from their post and have a break; but it simply does not
7 reflect the experiences of at least 90 percent of the people
8 we have -- we have testimony from.
9       MR. VAN TINE: And, in fact, Securitas did require
10 the employees to sign a lunch waiver to acknowledge that they
11 would not be able to take an uninterrupted lunch where they
12 were free.
13       THE COURT: Right. And I know you also have this
14 issue with the one hour. There's something about a one-hour
15 agreement?
16       MR. VAN TINE: No, there's -- with respect to the
17 amount of time the Department of Labor had established in I
18 believe they refer to it as an enforcement guideline or
19 something similar --
20       THE COURT: This wasn't a Securitas policy; this was
21 a Department of Labor --
22       MR. VAN TINE: No, but Securitas, in one of the
23 Securitas handbooks, they cited that policy and recognized
24 that if guards were required to maintain their own uniforms,

12.07.11 Transcript re Proceeding before Judge Feinerman
25   they should be compensated for an hour of work per week.

                                                                    8

1        THE COURT:  All right.  But you don't have a Wage
2   Payment and Collection Act claim --
3        MR. VAN TINE:  Excuse me?
4        THE COURT:  You're not arguing that this was -- you
5   don't have a claim in your case that this was a contractual
6   obligation, and you're not bringing a claim under the Wage
7   Payment and Collection Act?
8        MR. VAN TINE:  That's correct, your Honor.  We are
9   not.
10       THE COURT:  Okay.  What do you have to say -- let me
11  ask the defendant what it has to say about this notion that
12  the -- well, if you want to talk about ascertainability,
13  that's fine.  But I'm interested as well and primarily in the
14  notion that, yeah, there may have been a few officers here and
15  there who were able to take their lunch break in the lunchroom
16  or in their cars, but it's really a trivial minority, doesn't
17  rise to the level -- to the critical mass that would make
18  class resolution inappropriate.
19       MR. ROACHE:  Sure.  Your Honor, and if I could, just
20  on the ascertainability, I guess what I'd say on that is based
21  on the testimony -- and we have testimony from individuals who
22  wore all types of uniforms, and what became clear is there
23  were varying methods for how they all maintained their
24  uniforms.  Some ironed them.  Some didn't.  Some washed them
25  with other clothes, and that's all they did with it.

                                                                    9

1        Others testified they didn't do anything.  Their
2   spouse took care of their uniforms.  So, they obviously

12.07.11 Transcript re Proceeding before Judge Feinerman

3   wouldn't have a wage and hour claim if someone else is taking
4   care of --
5         THE COURT: Let me stop you for one second. Let's
6   say a spouse took care of the washing. Do you have a claim on
7   behalf of the spouse?
8         MR. VAN TINE: I do not think so, your Honor.
9         THE COURT: Okay. Go ahead.
10        MR. ROACHE: And so, your Honor, we had testimony
11  from a lot of people who said their spouse was the one who
12  maintained their uniforms; and as I said, a lot said they just
13  washed it with other clothes, regardless of which type of
14  uniform it was.
15        As for the meal periods, I think that varied from
16  individual to individual and actually day to day for
17  individuals. We had some individuals who said they were able
18  to take uninterrupted lunch breaks on three out of the five
19  days of the week, or on two out of the five days a week. We
20  had others who said they were relieved virtually every day.
21        And I think it varied from person to person as to
22  whether or not they were able to take this 20- to 30-minute
23  meal break, and that's why this individual issue, I think,
24  makes it impossible to certify a class on these issues.
25        THE COURT: Your first argument is, well, there's

                                                              10

1   some -- even people who had a soft-look and a hard-look
2   uniform, they varied in the amount of time that they spent
3   maintaining their uniforms, some not at all and some a lot.
4   Isn't that a damages issue rather than a liability issue?
5         MR. ROACHE: I don't think so, your Honor, because if
6   it was a wash-and-wear uniform and all they did was throw it

12.07.11 Transcript re Proceeding before Judge Feinerman

```
 7   in with other clothes, I don't think they have -- they don't
 8   have any compensable time under the act.
 9            THE COURT:  Right.  But we're going to carve out all
10   the wash-and-wear people.  We're just going to have hard-look
11   and soft-look people -- according to the plaintiffs, we're
12   just going to have hard-look and soft-look people in this
13   class, so we don't have to worry about wash-and-wear.
14            MR. ROACHE:  But how are they determining that
15   hard-look and soft-look are not wash-and-wear?  A lot of
16   people who had the soft-look and the hard-look said that they
17   would just wash and wear their uniforms and that's how they'd
18   maintain it.
19            THE COURT:  So, you're saying that -- and I'm glad
20   you raised this because I wasn't catching on to this.  You're
21   saying that just because somebody -- somebody being hard-look
22   or soft-look is not incompatible with the person being
23   wash-and-wear?
24            MR. ROACHE:  For example, I believe both Munoz and
25   Alberti, and I don't know if it was hard-look or soft-look,
```

                                                              11

```
 1   but wore one of those types of uniforms; and the way they said
 2   they maintained it, Munoz said for the first few months he
 3   worked, he took it to the dry-cleaners.  After that, he'd wash
 4   it.  He never ironed it after that.  So, it was, in effect,
 5   wash-and-wear, that he'd wash it with his other clothes.
 6            THE COURT:  So, you're actually making a case against
 7   ascertainability.  You're saying that just because a record
 8   shows that somebody is hard-look or soft-look doesn't mean
 9   that they are not wash-and-wear?
10            MR. ROACHE:  That's correct, your Honor.
11            THE COURT:  And that that still would have to be
```

12.07.11 Transcript re Proceeding before Judge Feinerman
12    resolved on an individualized basis?
13          MR. ROACHE: That's correct.
14          THE COURT: Okay. I may have to get further briefing
15    on this, but let me -- I want to give you guys the last word
16    at this point.
17          MR. ZOURAS: Well, our comment on the hard-look,
18    soft-look, your Honor, is that at least with those uniforms,
19    it removes any issue over whether or not it was required by
20    Securitas because that is one of the main points of contention
21    here.
22          Now, the rule is suffered or permitted, it's not
23    required; but certainly when it comes to actual or
24    constructive knowledge, whether or not they required something
25    is relevant.

                        12

1          And with respect to the hard and soft uniforms,
2    there is no dispute that they required special maintenance.
3    What they're saying is that despite the uniform standardized
4    requirement, some folks may not have done it or had their
5    wives do it or had the dry-cleaners do it. We believe those
6    are all damages issues.
7          But at least in terms of that more narrowly defined
8    class, there can be no dispute as to the defendant's
9    knowledge, expectations, whether or not they suffered and
10   permitted that type of work.
11         MR. ROACHE: And I would disagree with that, your
12   Honor. I don't think there was any requirement that these
13   individuals press their uniforms.
14         THE COURT: Okay. I'm sorry to draw this out longer,
15   but I'm going to -- I think I would -- I don't think I can

12.07.11 Transcript re Proceeding before Judge Feinerman

16  make an intelligent decision on this without hearing from the
17  defendants in response to this renewed motion. So, how long
18  would you like?
19         MR. ROACHE:  Three weeks, your Honor.
20         THE COURT:  That's fine.
21         THE CLERK:  December 28th.
22         THE COURT:  And then how long would you like to
23  reply?
24         MR. ZOURAS:  Can we have two weeks, your Honor?
25         THE COURT:  Sure.

                                                              13

1          THE CLERK:  January 11th.
2          MR. ZOURAS:  Can we go to January 13?
3          THE COURT:  Yes. And do we have a status coming up?
4          MR. ZOURAS:  On December 15, your Honor.
5          THE COURT:  Okay. Why don't we move that to
6   January -- the week of January 20th, Jackie. Do we have
7   something available?
8          THE CLERK:  We'll set you for January 19th, 9:00 a.m.
9          THE COURT:  All right. And I'll have a ruling on
10  this, and then we'll get -- we'll get going with class notice
11  for either the training claim or the training plus uniform
12  maintenance claim.
13         MR. ROACHE:  Okay. Thank you, your Honor.
14         MR. VAN TINE:  Thank you, your Honor.
15         MR. ZOURAS:  Thank you, your Honor.
16  (Which were all the proceedings heard.)
17                         CERTIFICATE
18    I certify that the foregoing is a correct transcript from
19  the record of proceedings in the above-entitled matter.
20

12.07.11 Transcript re Proceeding before Judge Feinerman

| | | |
|---|---|---|
| 21 | /s/Charles R. Zandi | December 19, 2011 |
| 22 | Charles R. Zandi<br>Official Court Reporter | Date |
| 23 | | |
| 24 | | |
| 25 | | |