UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRYSTAL HOWARD, JOHN HUEBNER, PAUL GALLOWAY, ROBERT NEWSON, and ALVAN YOUNG, individually and on behalf of those similarly situated, | ) ) ) ) ) |
| | 08 C 2746 |
| Plaintiffs, | Judge Feinerman |
| vs. | |
| SECURITAS SECURITY SERVICES USA, INC., | |
| Defendant. | |

| | |
|---|---|
| STEPHANIE HAWKINS and DARSEMIA JACKSON, individually and on behalf of those similarly situated, | ) ) ) |
| | 09 C 3633 |
| Plaintiffs, | Judge Feinerman |
| vs. | |
| SECURITAS SECURITY SERVICES USA, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in these two cases worked as hourly, non-exempt uniformed security officers for Defendant Securitas Security Services USA, Inc. The *Howard* plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, while the *Hawkins* plaintiffs allege violations of the FLSA and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. Plaintiffs in both cases allege that they performed three categories of off-the-clock work: (1) mandatory training and orientation; (2) work before and after their scheduled shifts; and (3)

-1-

uniform cleaning and maintenance. The cases were reassigned to the same district judge's calendar on the ground that they "raise analogous legal and factual claims against the same defendant." *Howard*, Doc. 259 (Gottschall, J.). The court granted class certification in *Hawkins* under Federal Rule of Civil Procedure 23 for the IMWL training/orientation claim but not for the IMWL pre/post-shift work and uniform maintenance/cleaning claims. *Hawkins*, 280 F.R.D. 388 (N.D. Ill. 2011). Likewise, the only claim in *Howard* that remains certified for FLSA collective action treatment under 29 U.S.C. § 216(b) is the training/orientation claim. *Howard*, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009) (Gottschall, J.) (conditionally certifying all three FLSA claims); *Howard*, Doc. 451 (decertifying the pre/post-shift work and uniform maintenance/cleaning claims).

Trial has been set in both cases for September 9, 2013. The court has bifurcated trial on the training/orientation claim—which, as just noted, is brought on behalf of a class in *Hawkins* and a collective in *Howard*—from trial on the pre/post-shift work and uniform maintenance/cleaning claims. *Hawkins*, Docs. 263-264; *Howard*, Doc. 514. And the court has denied Securitas's motion for summary judgment on the training/orientation claim brought by one of the *Hawkins* plaintiffs. *Hawkins*, Docs. 268-269. Now before the court are Securitas's motion *in limine* to preclude the expert testimony of Plaintiffs' designated expert, William Cutler, and Plaintiffs' motion *in limine* to preclude the expert testimony of Securitas's counter-expert, Alfred Perry. *Howard*, Docs. 419, 428. Both motions are granted.

**Background**

The factual background is set forth in prior opinions and will not be repeated here. Plaintiffs initially retained Oran Clemons as an expert witness, and Clemons prepared an expert

report.  *Howard*, Doc. 423 at 7.  After Clemons became ill, Plaintiffs substituted Cutler, *Howard*, Doc. 394, who prepared his own expert report, *Howard*, Doc. 419-1.  Cutler worked as a compliance specialist with the United States Department of Labor's Wage and Hour Division from 1966 until 1990.  *Id*. at 7.  In that role, Cutler conducted investigations of businesses to determine compliance with the FLSA.  *Ibid*.  Cutler entered the private sector in 1990, providing consultation to large employers regarding FLSA and state wage and hour matters.  *Id*. at 12.  Since 2000, Cutler has been the principal of Cutler Consulting Services LLC, which specializes in consultant and litigation support services involving wage and hour issues.  *Ibid*.

Plaintiffs retained Cutler to "provide a determination regarding the defendant's status of compliance with the applicable provisions of the [FLSA] and the [IMWL] relative to the plaintiffs' allegations."  *Id*. at 19.  Cutler's report first addresses the relevant statutes, regulations, and interpretive bulletins.  *Id*. at 19-41.  It then excerpts several passages from Clemons's report, expresses Cutler's agreement with Clemons, and updates the damages calculations originally performed by Clemons.  *Id*. at 42-55.  Although the "Opinions" section of Cutler's report contains only one opinion, Cutler clarified at his deposition that he intends to offer three opinions.  *Id*. at 56; *Howard*, Doc. 419-2 at 18, 28, 45.  The first opinion is:

> In my professional opinion and within a reasonable degree of professional certainty, based on the documentation and testimony reviewed and based upon my years of training and experience working at the [Wage and Hour Division] as a Compliance Specialist, I believe that an analysis of Securitas's pay practices using the methodology employed by a Compliance Specialist of the U.S. Department of Labor's [Wage and Hour Division] would result in a determination that Securitas has not paid the plaintiffs in compliance with the applicable wage and hour regulations.…

*Howard*, Doc. 419-1 at 56.  Cutler's second opinion is that "[w]hile working for the U.S. Department of Labor it would have been [his] recommendation that [Securitas's] violations are

willful." *Id*. at 54. This opinion is relevant because the FLSA statute of limitations is three years rather than two years and liquidated damages are mandatory if an employer's FLSA violation is found to be willful. *See* 29 U.S.C. §§ 255(a), 260; *Bankston v. State of Ill.*, 60 F.3d 1249, 1254-55 (7th Cir. 1995); *Calderon v. Witvoet*, 999 F.2d 1101, 1108 (7th Cir. 1993). Cutler's third opinion is: "In my professional opinion and within a reasonable degree of professional certainty, it is possible to extrapolate the results of a sampling to an entire class of employees" to calculate damages sustained by the class as a whole. *Id*. at 42; *see also id*. at 50, 52 (classwide damage estimates).

Securitas's proposed expert, Alfred H. Perry, worked for forty-one years at the Wage and Hour Division. *Howard*, Doc. 428 at 40. For the first thirteen years, he investigated employer compliance with the FLSA. *Ibid*. He later served as an Assistant Area Director, an Area and District Director, and a Regional Administrator. *Id*. at 40-41. Upon his retirement from the Department in 2002, Perry joined Jackson Lewis LLP as a Senior Consultant, providing guidance to employers on the FLSA and related statutes. *Ibid*. Securitas retained Perry to rebut the opinions offered by Plaintiffs' expert. *Id*. at 17. Not surprisingly, Perry comes to the opposite conclusion on the three topics addressed by Cutler. *Id*. at 36-37.

## Discussion

Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods;

and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010). The district court serves as the "gate-keeper who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741-42 (7th Cir. 2007) (citation and internal quotation marks omitted). The expert's proponent bears the burden of proving by a preponderance of the evidence that the testimony satisfies Rule 702. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Cutler's first and second opinions—that Securitas violated the FLSA and the IMWL, and that the violations were willful—are inadmissible under Rule 702. Those opinions synch up precisely with the questions the jury will decide at trial. It is true that Rule 704 says that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). As the Seventh Circuit recently explained, however: "The committee notes to … Rule [704] explain … that Rule 702, which requires that opinion be helpful to the trier of fact, and Rule 403, which provides for exclusion of evidence that wastes time, 'afford assurance against the admission of opinions which would merely tell the trier of fact what result to reach.'" *Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir. 2012) (quoting Fed. R. Evid. 704, 1972 advisory committee notes) (some alterations omitted). That is precisely what Cutler's first two opinions would do if he were allowed to present them at trial, which renders them inadmissible. *See United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) ("Regardless of whether Barnes was an expert, she could not merely tell the jury what result to reach.") (internal quotation marks omitted); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir.

2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"); *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900-01 (7th Cir. 1994) (holding that the district court erred in allowing expert testimony as to whether defendant complied with Federal Motor Vehicle Safety Standards); *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at *4 (N.D. Ill. May 26, 2005) ("an expert may not offer opinion testimony as to whether a defendant violated a statute or regulation, at least where that statute or regulation is at issue in the case"); *Dubiel v. Columbia Hosp. L.P.*, 2005 WL 5955691, at *1, 4 (S.D. Fla. Jan. 11, 2005) (barring Cutler from opining as to "[w]hether Columbia Hospital's meal break policy was in compliance with the FLSA" and as to "[w]hether any alleged violation of the FLSA can be considered willful under the FLSA").

Cutler's third opinion—that classwide damages can be "extrapolate[d]" by way of "sampling" from the damages sustained by the named plaintiffs and certain other class members—also is inadmissible. That opinion is irrelevant as to the pre/post-shift and uniform maintenance/cleaning claims because those claims are proceeding only on behalf of the named plaintiffs; there is no class on whose behalf damages can be extrapolated. *See Kempner Mobile Elects., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 713 (7th Cir. 2005) ("the district court properly applied Federal Rule of Evidence 702 to exclude the damages evidence submitted by Kempner's expert as irrelevant"). The opinion is not irrelevant as to the training/orientation claim, which is being pursued on a representative basis, but it is nonetheless inadmissible in light of *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013).

The putative class representatives in *Espenscheid*, a case brought under the FLSA and the IMWL, proposed presenting evidence of 42 "representative" members of the class for the

purpose of establishing classwide damages for the 2341-member class. *Id*. at 774. The Seventh Circuit rejected the plaintiffs' attempt to "extrapolate from the experience of the 42 to that of the 2341 [class members]." *Id*. at 774. The court first noted that the named plaintiffs were "unable to explain … how these 'representatives' were chosen—whether for example they were volunteers, or perhaps selected by class counsel after extensive interviews and hand picked to magnify the damages sought by the class," and that "[t]here is no suggestion that sampling methods used in statistical analysis were employed to create a random sample of class members to be the witnesses." *Ibid*. The Seventh Circuit then noted that "even if the 42, though not a random sample, turned out by pure happenstance to be representative in the sense that the number of [unpaid] hours they worked per week … was equal to the average number of hours of the entire class, this would not enable the damages of any members of the class other than the 42 to be calculated." *Ibid*. On that point, the court added that "if for example the average number of overtime hours per class member per week was 5, then awarding 5 X 1.5 X hourly wage to a class members who had only 1 hour of overtime would confer a windfall on him, while awarding the same amount of damages to a class member who had 10 hours of overtime wold (assuming the same hourly wage) undercompensate him by half." *Ibid*. The court concluded that "evidence of the experience of a small, unrepresentative sample" of a class "can't support an inference about the work time of thousands of workers." *Id*. at 775.

The Seventh Circuit said all this by way of holding that an IMWL class and a FLSA collective had been improperly certified, but the analysis applies with equal force to evaluating the admissibility of Cutler's opinion that damages in a class and collective action can and should be calculated by sampling. Cutler's opinion extrapolates from the experience of 44 sample

plaintiffs that each class member spent twenty hours in unpaid training and orientation. *Howard*, Doc. 419-1 at 49. But Cutler does not explain how the 44 representatives were selected; in fact, he has no relevant training in statistics and admitted that he had "no knowledge whatsoever" whether a statistically appropriate random selection process had been used to select the sample plaintiffs. *Id.*, Doc. 419-2 at 8-9, 36. The 44 representatives testified to have spent various hours in introductory training—from a minimum of zero to a maximum of 40, with some giving no hourly figure at all—and some testified that they had been paid for that time. *Id.*, Doc. 419-4 at 3. Those features of Cutler's third opinion are materially identical to the flaws that led *Espenscheid* to prohibit extrapolation in that case; it follows that the opinion is inadmissible. *See Fast v. Applebee's Int'l, Inc.*, 2009 WL 2391775, at *6 (E.D. Mo. Aug. 3, 2009) (excluding Cutler's opinion that "it is possible to extrapolate the results of the opt-in questionnaire to the entire class of opt-in plaintiffs").

Accordingly, Cutler's proposed expert testimony is excluded in its entirety. Given this disposition, Perry's proposed expert testimony is excluded as well. His opinion that Securitas complied with the FLSA and the IMWL, and his opinion that any violations were not willful, are inadmissible for the same reason that Cutler's mirror-image testimony is inadmissible. And Perry's opinion that classwide damages may not be extrapolated is irrelevant now that Cutler has been barred from offering an extrapolation-based classwide damages opinion.

**Conclusion**

For the foregoing reasons, Securitas's motion *in limine* to exclude Cutler's expert testimony and Plaintiffs' motion *in limine* to exclude Perry's expert testimony are granted.

March 28, 2013

_____
United States District Judge